Van Antwerp
v.
Newman.

VAN ANTWERP, Sheriff of ALBANY, *against* NEWMAN.

ERROR from the Mayor's Court of the city of Albany. The action in the Court below, was brought by Newman against Van Antwerp. The declaration contained two counts. The first count averred, that Newman was owner and proprietor of divers goods and chattels, (enumerating them,) of the value of, &c., which had been let to hire to one Husted, for a certain term, and were in Husted's possession, as lessee thereof; but that the defendant, knowing the premises, and intending to injure Newman in his reversionary interest, while the same goods were in possession of Husted, and before his term had expired, seized and took the goods from and out of the possession of Husted, and converted and absolutely sold and disposed of the goods to the defendant's own use.

The second count was trover for the same articles.

Plea, the general issue.

On the trial, the facts set forth in the first count were proved. The sale was made and the action commenced during the term, for which the goods were out upon lease. The sale was of the goods as the absolute property of Husted, and was made by the defendant as Sheriff of Albany, in virtue of a *fi. fa.* against Husted; without particularizing his special property as the subject of sale. Notice of Newman's interest was given to the Sheriff at the time of the sale. The defendant below moved for a nonsuit, which was denied, and the Court charged the jury in favor of the plaintiff, who found accordingly. The defendant excepted to this decision and charge.

*The sheriff may sell a term in goods or chattels, upon execution against the lessee; and the purchaser acquires a right to use the goods during the term.*

*If the sheriff sell the goods as the absolute property of the tenant, not mentioning his special property, though he know of it, no action lies against him for this at the suit of the lessor; for it does not divest the lessor's right or impair his reversionary interest.*

*Aliter, it seems, if he destroy the goods or otherwise injure them.*

*The sheriff cannot seize and sell the property of A. upon an execution against B.*

*J. L'Amoreux* and *J. Koon*, for the plaintiff in error, insisted,

1. That the Sheriff had a right to sell the term. (*Gordon* v. *Harper*, 7 T. R. 9.)

2. It was not necessary at the time of the sale to give notice that the tenant's interest alone would be sold. That is

a question between the tenant and the purchaser. The landlord has nothing to do with it. (2 T. R. 376. 1 John. Rep. 471. 6 id. 44. 7 id. 535.)

3. At any rate, no action would lie during the pendency of the lease. (1 Esq. N. P. Gould's ed. pt. 2d, 129. *Gordon* v. *Harper*, 7 T. R. 9, close of Ld. Kenyon's opinion.)

*D. L. Van Antwerp*, contra, cited *Manning's case*, (8 Co. 96 b.) *Storm* v. *Livingston*, (6 John. Rep. 44;) 2 Chit. Pl. 329, 330, 2 Saund, 47, 4 T. R. 489; 7 id. 9, and 1 Chit. Pl. 49, 141.

*Curia*, per SAVAGE, Ch. J. The first question which presents itself is, whether the lessee of goods and chattels for a term, has an interest which is the subject of a sale on execution.

It is well settled in the English courts, that the lessee's interest in goods may be sold, (*Gordon* v. *Harper*, 7 T. R. 11, *Ward* v. *Macauley*, 4 id. 489, *Manning's case*, 8 Co. 191,) and the purchaser is entitled to the beneficial use of them during the term.

The next question is, whether the Sheriff, by a sale absolute in its terms, on an execution against the lessee, can di vest the lessor of his interest?

It is contended on the part of the defendant in error, that the purchaser at the Sheriff's sale acquires a complete title, and will hold the chattels thus purchased against the lessor, or general owner; and several authorities are cited to support that position. The cases cited decide, that when goods of a defendant are sold on execution, and afterwards the judgment is reversed, though the judgment is, that the defendant shall be restored to all he hath lost, &c., yet in such case the purchaser shall hold the property, because the Sheriff, at the time of the sale, had lawful authority to sell, and, therefore, the defendant shall not be restored to the possession of the goods themselves, but shall receive the value of them.

In a note to *Matthew Manning's case*, (8 Co. 191,) there is a case (*Amner* v. *Loddington*) in point. Pierpoint held a

lease for 99 years, of certain houses in London. By his will he devised them to his wife for her life, and after her death, to her children unpreferred. After his death, his wife married Fulleshurst; and on an execution against Fulleshurst, the Sheriffs sold the term (by which I understand the lease for 99 years) to Loddington. Afterwards, the judgment on which the execution had issued, and by virtue of which the sale was made, was reversed, and the wife of Fulleshurst died. After her death, her daughter unpreferred, Alice Fulleshurst, entered and made a lease to the plaintiff, Amner. After several arguments in the Common Pleas, three several points were adjudged: 1. That the executory devise was good; 2. That it could not be destroyed by a sale, either by the wife or by the Sheriffs; and 3. That the sale by the Sheriffs should stand, notwithstanding the reversal, and the plaintiff in error should be restored to the value; for the Sheriffs, who made the sale, had lawful authority to sell, and by the sale, the vendee had an absolute property in the term *during the life of the wife ;* and judgment was given for the plaintiff, which was afterwards affirmed, on a writ of error, in the King's Bench.

So in the case under consideration, the interest of the lessor cannot be destroyed in virtue of a sale either by Husted or the Sheriff. The purchaser from one or the other, possesses the interest of Husted till the expiration of the lease, and then the property reverts to the original owner. A contrary doctrine would give the Sheriff power, by virtue of an execution against one man, to take the goods and chattels of another, and by a sale, to divest the owner of his title.

That the correct doctrine is laid down in this note to *Manning's case,* we have the authority of Lord Mansfield, in *Cooper* v. *Chitty* and *Blackiston,* (1 Burr. 34,) where he says, (speaking of *Manning's case* among others,) " None of these cases authorize the Sheriff to sell the goods of a third person; and it is admitted the vendee is not protected here, because at the time of the sale, the Sheriff had no authority to sell." So in the case under consideration, the Sheriff had no authority to sell any thing but the goods of Husted. The

vendee is protected in his purchase as between the parties to the judgment, but not when the interests of third persons are concerned.  So President Pendleton, in *Burnley* v. *Lambert*, (1 Wash. Rep. 313,) commenting on *Manning's case*, asks, "But if an execution issue against the goods of A, and the Sheriff seize and sell the property of B, will it be said that this is done by lawful authority ? surely not."  In *Carter* v. *Simpson*, (7 John. Rep. 536,) the Court say that no case admits a title in the purchaser, where the Sheriff acted without authority.  In *Storm* v. *Livingston*, (6 John. Rep. 44,) the decision in favor of the purchaser rests on the want of evidence of demand and refusal, or actual conversion, one of which was necessary, because he came lawfully into possession, that is, by color of law.  That case is no authority for saying that the purchaser acquired a good title, but the contrary.

My opinion, therefore, is, that the Sheriff had authority to sell the interest of Husted ; that it was not in his power to divest Newman, the lessor, of his property in the goods ; nor has he done so.  Newman, therefore, has no right of action against him.  When the suit was commenced, Newman could not know that his goods would not be restored to him at the expiration of the lease.  He was, therefore, premature in bringing his suit, unless an injury had been done to his reversionary interest.  Had the Sheriff or any other person destroyed the goods, in that case, it would be apparent that they could not be restored, and probably an action would lie at any time after the destruction of them ; but such is not this case.  I am of opinion, that the judgment in the Court below should be reversed.

Judgment reversed.